STEVEN A. GIBSON, ESQ.
Nevada Bar No. 6656
sgibson@gibsonlowry.com
JODI DONETTA LOWRY, ESQ.
Nevada Bar No. 7798
jlowry@gibsonlowry.com

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Telephone 702.541.7888
Facsimile 702.541.7899

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MOTOGOLF.COM, LLC, a Nevada limited-liability company;<br><br>Plaintiff,<br><br>v.<br><br>TOP SHELF GOLF, LLC, a Maine limited liability company; TOP SHELF IT SOLUTIONS, INC., a Maine corporation; IVAN SOKOLOVICH, an individual; INNA SOKOLOVICH, an individual; KEVIN P. MURPHY, an individual; KEVIN E. MURPHY, an individual; ALIAKSANDR SHAVIALEVICH, an individual;<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff Motogolf.com, LLC ("Plaintiff" or "Motogolf"), by and through its counsel, Gibson Lowry LLP, complains as follows against Defendants Top Shelf Golf, LLC ("Top Shelf LLC"), Top Shelf IT Solutions, Inc. ("Top Shelf IT"), Ivan Sokolovich ("Mr. Sokolovich"), Inna Sokolovich ("Mrs. Sokolovich"), Kevin P. Murphy ("Mr. K.P. Murphy"), Kevin E. Murphy ("Mr. K.E. Murphy"), and Aliaksandr Shavialevich ("Mr. Shavialevich"), on information and belief, that the following are and have been true at all time relevant to this lawsuit unless otherwise indicated specifically to the contrary:

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541.7888 • Fax (702) 541.7899

## JURISDICTION

1. This Court has original jurisdiction over Plaintiff's First, Second, Third, Twelfth, Thirteenth and Fourteenth Causes of Action (the "Federal Causes of Action") pursuant to 28 U.S.C. § 1331, conferring original jurisdiction in federal district courts over all federal causes of action, and 15 U.S.C. § 1121(a) and 18 U.S.C. § 1030, pursuant to which the Federal Causes of Action arise under the Lanham Act and the Computer Fraud and Abuse Act (the "CFAA").

2. This Court has supplemental jurisdiction over Plaintiff's remaining Causes of Action (the "State-Law Causes of Action") pursuant to 28 U.S.C. § 1338(b) & § 1367, because the State-Law Causes of Action are so related to the Federal Causes of Action as to form part of the same case or controversy as the Federal Causes of Action pursuant to Article III of the United States Constitution.

3. This Court has personal jurisdiction over Defendants because Defendants have engaged in deliberate malicious activity directed at Motogolf, a citizen of Nevada who was known to Defendants to be a citizen of Nevada, with such activity undertaken with the specific intention of causing damage to Motogolf in Nevada.

4. Defendants Mr. Sokolovich, Mrs. Sokolovich, and Top Shelf LLC instigated a course of intentional conduct undertaken by Mr. Sokolovich, Mrs. Sokolovich, Top Shelf LLC, Top Shelf IT, Mr. K.P. Murphy, Mr. K.E. Murphy, and Mr. Shavialevich (collectively the "Conspirators"), specifically intended to harm Motogolf on an ongoing basis in Motogolf's principal place of business, *i.e.* Nevada.

5. Defendants are aware of Motogolf's online presence because Defendants' intentional, harmful acts complained of herein target Motogolf's online presence.

6. Motogolf's online presence contains multiple indicia that Motogolf's principal place of business is in Nevada, as discussed more fully *infra.*

7. The Conspirators' course of conduct specifically intended to harm Motogolf in Nevada consists of, at a minimum, clicking on Motogolf's pay-per-click online ads in an illegitimate manner calculated to cause damage to Motogolf, as set forth more comprehensively *infra,* thereby causing Motogolf's advertising expenditures to be wasted and diverted from

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

legitimate customers who would otherwise have spent money that would have benefitted Motogolf in Nevada.

8.     Motogolf's pay-per-click online ads that are the subject of the Conspirators' intentionally harmful clicking Activity emanate from technological infrastructure controlled by Motogolf in Nevada and administered by Motogolf from Motogolf's principal place of business in Nevada.

9.     The Conspirators are familiar with the technological infrastructure necessary to effectuate the usage of pay-per-click online advertising and are aware that, by intentionally interfering in a harmful manner with Motogolf's pay-per-click online advertising, the Conspirators are interfering in a harmful manner with business operations that Motogolf regularly conducts in Nevada.

10.    Defendant Mr. Sokolovich, at a minimum, acting as a principal, agent and/or representative of Top Shelf LLC, has attended professional functions and trade shows in Nevada at which Defendant Mr. Sokolovich, at a minimum, acting as a principal, agent and/or representative of Top Shelf LLC, had the opportunity to interact with the principals of Motogolf and at a minimum has had access to ample information confirming that Motogolf has Motogolf's principal place of business in Nevada.

**NATURE OF ACTION**

11.    This is an action under the Computer Fraud and Abuse Act under 18 U.S.C. § 1030; unfair business practices under 15 U.S.C. § 1125(a)(1)(B); Nevada's law enjoining unlawful acts regarding computers at NRS 205.4765; Nevada's antiracketeering statute at NRS 207.350 *et seq.*; Nevada's deceptive business practice laws at 598.0915; and intentional interference with contractual relations, intentional interference with prospective economic advantage, and civil conspiracy under Nevada common law.

**PARTIES**

12.    Motogolf is a limited-liability company organized under the laws of the State of Nevada.

13.    All members of Motogolf are residents of the State of Nevada.

3

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

14.     Top Shelf LLC is a limited liability company organized under Maine law.

15.     Top Shelf IT is a corporation organized under Maine law.

16.     Mr. Sokolovich is a natural person who is a citizen of the State of Maine.

17.     Mr. Sokolovich is the only "member, manager, or other authorized person" with respect to Top Shelf LLC.

18.     Mr. Sokolovich is the president of Top Shelf IT.

19.     Mr. Sokolovich is the sole shareholder of Top Shelf IT.

20.     Mrs. Sokolovich is a natural person who is a citizen of the State of Maine.

21.     Ms. Sokolovich is the "art director" of Top Shelf IT, at a minimum.

22.     Mr. and Mrs. Sokolovich are married to one another.

23.     Mr. K.P. Murphy is a natural person who is a citizen of the State of Massachusetts.

24.     Mr. K.E. Murphy is a natural person who is a citizen of the State of Maine.

25.     Mr. Shavialevich is a natural person who is a citizen of the State of Massachusetts.

**VENUE**

26.     Venue is proper in this judicial district under 28 U.S.C. § 1391 (b)(2) because a substantial part of the property that is the subject of this action, specifically the assets of Plaintiff Motogolf that have been diminished by the deliberate activity of Defendants undertaken with the intent to harm Motogolf, and the computer data under the control of Motogolf that has been accessed in an unauthorized manner by Defendants, is located in this judicial district.

**FACTS**

27.     Motogolf sells golf equipment online via an online store (the "Motogolf Site").

28.     Motogolf engages in interstate commerce by way of the Motogolf Site.

29.     The Motogolf Site makes clear that Motogolf's principal place of business is in Nevada by, without limitation, providing a mailing address on Durango Drive in Las Vegas for Motogolf, providing a telephone number in the (702) area code for Motogolf, and announcing that Nevada sales tax must be collected on sales to customers with delivery addresses in Nevada.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

4

30.     Top Shelf LLC came into existence on or about September 24, 2018.

31.     Top Shelf LLC sells golf equipment online.

32.     Top Shelf LLC competes directly with Motogolf.

33.     Motogolf advertises the Motogolf Site through the purchase of online advertisements for which Motogolf is obligated to pay based on the number of times online users click on those advertisements ("PPC Ads"; specifically with respect to Motogolf, "Motogolf PPC Ads").

34.     Motogolf purchases PPC Ads through contracts with online advertising platforms such as the well-known internet company that operates under the service mark GOOGLE ("Google"; such contracts "PPC Contracts") under which Motogolf contracts to pay a certain amount of money to the advertising platform for a particular number of clicks on PPC Ads per day.

35.     Under PPC Contracts to which Motogolf is a party, viewers who click on Motogolf PPC Ads receive valuable, requested data from Motogolf regarding Motogolf's product offerings that may be of interest to those prospective customers.

36.     Under PPC Contracts to which Motogolf is a party, when a viewer clicks on one or more Motogolf PPC Ads, Motogolf receives valuable, requested demographic and other data relevant to Motogolf's business regarding that prospective customer viewer.

37.     Under PPC Contracts, once other viewers have clicked on those PPC Ads for the contracted-for number of times in a given time period, those PPC Ads do not remain available for viewers to view, or to utilize by way of clicking on same (such phenomenon "PPC Exhaustion").

38.     Under PPC Contracts, once advertisers experience PPC Exhaustion, those advertisers pay higher rates per click for future PPC Ad placement (such phenomenon "PPC Exhaustion Price Increases").

39.     When a viewing computer user clicks on a Motogolf PPC Ad, that viewing computer user is directed to content reposed on servers within the technological infrastructure under the control of Motogolf (the "Motogolf Computers").

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

40.     Motogolf uses the Motogolf Computers in interstate commerce.

41.     Motogolf's intention in placing Motogolf PPC Ads is, in pertinent part, to allow legitimate existing and potential customers and business relationships ("Motogolf Authorized Users") access to the Motogolf Computers for purposes of, without limitation, viewing Motogolf's inventory and other content and, if desired, making purchases from same.

42.     Motogolf is a party to contracts with, without limitation, Google for the purchase of Motogolf PPC Ads.

43.     Top Shelf LLC is aware of the general nature and mechanism of operation of PPC Contracts.

44.     Top Shelf IT is aware of the general nature and mechanism of operation of PPC Contracts.

45.     Mr. Sokolovich is aware of the general nature and mechanism of operation of PPC Contracts.

46.     Mrs. Sokolovich is aware of the general nature and mechanism of operation of PPC Contracts.

47.     Mr. K.P. Murphy is aware of the general nature and mechanism of operation of PPC Contracts.

48.     Mr. K.E. Murphy is aware of the general nature and mechanism of operation of PPC Contracts.

49.     Mr. Shavialevich is aware of the general nature and mechanism of operation of PPC Contracts.

50.     The Conspiracy is aware of the general nature and mechanism of operation of PPC Contracts.

51.     Top Shelf LLC was aware, prior to embarking on the course of conduct described herein, of the phenomenon of PPC Exhaustion.

52.     Top Shelf IT was aware, prior to embarking on the course of conduct described herein, of the phenomenon of PPC Exhaustion.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

53.     Mr. Sokolovich was aware, prior to embarking on the course of conduct described herein, of the phenomenon of PPC Exhaustion.

54.     Mrs. Sokolovich was aware, prior to embarking on the course of conduct described herein, of the phenomenon of PPC Exhaustion.

55.     Mr. K.P. Murphy was aware, prior to embarking on the course of conduct described herein, of the phenomenon of PPC Exhaustion.

56.     Mr. K.E. Murphy was aware, prior to embarking on the course of conduct described herein, of the phenomenon of PPC Exhaustion.

57.     Mr. Shavialevich was aware, prior to embarking on the course of conduct described herein, of the phenomenon of PPC Exhaustion.

58.     The Conspiracy was aware, prior to embarking on the course of conduct described herein, of the phenomenon of PPC Exhaustion.

59.     Top Shelf LLC was aware, prior to embarking on the course of conduct described herein, of the phenomenon of PPC Exhaustion Price Increases.

60.     Top Shelf IT was aware, prior to embarking on the course of conduct described herein, of the phenomenon of PPC Exhaustion Price Increases.

61.     Mr. Sokolovich was aware, prior to embarking on the course of conduct described herein, of the phenomenon of PPC Exhaustion Price Increases.

62.     Mrs. Sokolovich was aware, prior to embarking on the course of conduct described herein, of the phenomenon of PPC Exhaustion Price Increases.

63.     Mr. K.P. Murphy was aware, prior to embarking on the course of conduct described herein, of the phenomenon of PPC Exhaustion Price Increases.

64.     Mr. K.E. Murphy was aware, prior to embarking on the course of conduct described herein, of the phenomenon of PPC Exhaustion Price Increases.

65.     Mr. Shavialevich was aware, prior to embarking on the course of conduct described herein, of the phenomenon of PPC Exhaustion Price Increases.

66.     The Conspiracy was aware, prior to embarking on the course of conduct described herein, of the phenomenon of PPC Exhaustion Price Increases.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

67.     Top Shelf LLC understood, prior to embarking on the course of conduct described herein, that once an advertiser has experienced PPC Exhaustion with respect to advertisements emanating from a particular PPC Contract, that advertiser will be deprived of the value of future customer relationships and acquisition of valuable demographic data regarding viewers who legitimately click on those advertisements (such benefits the "PPC Benefits").

68.     Top Shelf IT understood, prior to embarking on the course of conduct described herein, that once an advertiser has experienced PPC Exhaustion, that advertiser will be deprived of PPC Benefits.

69.     Mr. Sokolovich understood, prior to embarking on the course of conduct described herein, that once an advertiser has experienced PPC Exhaustion, that advertiser will be deprived of PPC Benefits.

70.     Mrs. Sokolovich understood, prior to embarking on the course of conduct described herein, that once an advertiser has experienced PPC Exhaustion, that advertiser will be deprived of PPC Benefits.

71.     Mr. K.P. Murphy understood, prior to embarking on the course of conduct described herein, that once an advertiser has experienced PPC Exhaustion, that advertiser will be deprived of PPC Benefits.

72.     Mr. K.E. Murphy understood, prior to embarking on the course of conduct described herein, that once an advertiser has experienced PPC Exhaustion, that advertiser will be deprived of PPC Benefits.

73.     Mr. Shavialevich understood, prior to embarking on the course of conduct described herein, that once an advertiser has experienced PPC Exhaustion, that advertiser will be deprived of PPC Benefits.

74.     The Conspiracy understood, prior to embarking on the course of conduct described herein, that once an advertiser has experienced PPC Exhaustion, that advertiser will be deprived of PPC Benefits.

75.     Commencing upon Top Shelf LLC's formation in September 2018, Top Shelf LLC, as the instrumentality of, without limitation, Mr. Sokolovich and Mrs. Sokolovich,

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

embarked on a course of willful, deliberate harmful conduct intended to provide Top Shelf LLC with a competitive business advantage over Motogolf.

76.     Commencing upon Top Shelf LLC's formation in September 2018, Top Shelf LLC, Mr. Sokolovich and Mrs. Sokolovich, at a minimum, sought to bolster Top Shelf LLC's economically competitive position in the online golf equipment market by selling various articles of golf equipment at prices lower than the required minimum advertised prices set by those equipment articles' vendors (the "MAP Misconduct").

77.     In early 2019, Motogolf's principals became aware of, without limitation, the MAP Misconduct.

78.     Upon becoming aware of the MAP Misconduct, Motogolf's principals reported the MAP Misconduct (the "MAP Misconduct Reporting") to the vendors whose products were being sold by Top Shelf LLC for lower than the required minimum advertised price.

79.     Shortly after Motogolf's principals effectuated the MAP Misconduct Reporting, the Conspirators formed the Conspiracy.

80.     Shortly after Motogolf's principals had effectuated the MAP Misconduct Reporting and the Conspirators had formed the Conspiracy, the Conspirators agreed that the Conspiracy would undertake a course of intentional conduct that was willfully and deliberately calculated to cause harm to Motogolf.

81.     Top Shelf LLC engages in activity that consists of: (a) going online using one or more different electronic devices; (b) seeking out Motogolf PPC Ads, and (c) clicking on the Motogolf PPC Ads repeatedly ("Illegitimate Clicks"), all with the intent of effectuating PPC Exhaustion with respect to Motogolf PPC Ads (such activity the "Illegitimate Click Activity").

82.     Top Shelf IT engages in the Illegitimate Click Activity.

83.     Mr. Sokolovich engages in the Illegitimate Click Activity.

84.     Mrs. Sokolovich engages in the Illegitimate Click Activity.

85.     Mr. K.P. Murphy engages in the Illegitimate Click Activity.

86.     Mr. K.E. Murphy engages in the Illegitimate Click Activity.

87.     Mr. Shavialevich engages in the Illegitimate Click Activity.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

88.     The Conspiracy engages in the Illegitimate Click Activity.

89.     The Conspiracy has engaged in Illegitimate Click Activity on at least the occasions identified in Exhibit 1, attached hereto and incorporated herein.

90.     Top Shelf LLC engages in Illegitimate Click Activity for purposes of, without limitation, gaining an economic advantage over Motogolf in an manner intentionally calculated to harm Motogolf.

91.     Top Shelf IT engages in Illegitimate Click Activity for purposes of, without limitation, facilitating Top Shelf LLC's gaining of an economic advantage over Motogolf in a manner intentionally calculated to harm Motogolf.

92.     Mr. Sokolovich engages in Illegitimate Click Activity for purposes of, without limitation, facilitating Top Shelf LLC's gaining of an economic advantage over Motogolf in a manner intentionally calculated to harm Motogolf.

93.     Mrs. Sokolovich engages in Illegitimate Click Activity for purposes of, without limitation, facilitating Top Shelf LLC's gaining of an economic advantage over Motogolf in a manner intentionally calculated to harm Motogolf.

94.     Mr. K.P. Murphy engages in Illegitimate Click Activity for purposes of, without limitation, facilitating Top Shelf LLC's gaining of an economic advantage over Motogolf in a manner intentionally calculated to harm Motogolf.

95.     Mr. K.E. Murphy engages in Illegitimate Click Activity for purposes of, without limitation, facilitating Top Shelf LLC's gaining of an economic advantage over Motogolf in a manner intentionally calculated to harm Motogolf.

96.     Mr. Shavialevich engages in Illegitimate Click Activity for purposes of, without limitation, facilitating Top Shelf LLC's gaining of an economic advantage over Motogolf in a manner intentionally calculated to harm Motogolf.

97.     The Conspiracy engages in Illegitimate Click Activity for purposes of, without limitation, gaining an economic advantage over Motogolf in a manner intentionally calculated to harm Motogolf.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

98.     Top Shelf LLC engages in Illegitimate Click Activity for purposes of, without limitation, triggering PPC Exhaustion Price Increases with respect to Motogolf PPC Ads.

99.     Top Shelf IT engages in Illegitimate Click Activity for purposes of, without limitation, triggering PPC Exhaustion Price Increases with respect to Motogolf PPC Ads.

100.    Mr. Sokolovich engages in Illegitimate Click Activity for purposes of, without limitation, triggering PPC Exhaustion Price Increases with respect to Motogolf PPC Ads.

101.    Mrs. Sokolovich engages in Illegitimate Click Activity for purposes of, without limitation, triggering PPC Exhaustion Price Increases with respect to Motogolf PPC Ads.

102.    Mr. K.P. Murphy engages in Illegitimate Click Activity for purposes of, without limitation, triggering PPC Exhaustion Price Increases with respect to Motogolf PPC Ads.

103.    Mr. K.E. Murphy engages in Illegitimate Click Activity for purposes of, without limitation, triggering PPC Exhaustion Price Increases with respect to Motogolf PPC Ads.

104.    Mr. Shavialevich engages in Illegitimate Click Activity for purposes of, without limitation, triggering PPC Exhaustion Price Increases with respect to Motogolf PPC Ads.

105.    The Conspiracy engages in Illegitimate Click Activity for purposes of, without limitation, triggering PPC Exhaustion Price Increases with respect to Motogolf PPC Ads.

106.    Top Shelf LLC has utilized Top Shelf LLC's own resources to engage in the Illegitimate Click Activity.

107.    Top Shelf LLC has allowed the other Conspirators to use Top Shelf LLC''s resources to engage in the Illegitimate Click Activity.

108.    Top Shelf IT has utilized the resources of Top Shelf LLC to engage in the Illegitimate Click Activity.

109.    Mr. Sokolovich has utilized the resources of Top Shelf LLC to engage in the Illegitimate Click Activity.

110.    Mrs. Sokolovich has utilized the resources of Top Shelf LLC to engage in the Illegitimate Click Activity.

111.    Mr. K.P. Murphy has utilized the resources of Top Shelf LLC to engage in the Illegitimate Click Activity.

112. Mr. K.E. Murphy has utilized the resources of Top Shelf LLC to engage in the Illegitimate Click Activity.

113. Mr. Shavialevich has utilized the resources of Top Shelf LLC to engage in the Illegitimate Click Activity.

114. The Conspiracy has utilized the resources of Top Shelf LLC to engage in the Illegitimate Click Activity.

115. Top Shelf IT has utilized Top Shelf IT's own resources to engage in the Illegitimate Click Activity.

116. Top Shelf IT has allowed the other Conspirators to use Top Shelf IT''s resources to engage in the Illegitimate Click Activity.

117. Top Shelf LLC has utilized the resources of Top Shelf IT to engage in the Illegitimate Click Activity.

118. Mr. Sokolovich has utilized the resources of Top Shelf IT to engage in the Illegitimate Click Activity.

119. Mrs. Sokolovich has utilized the resources of Top Shelf IT to engage in the Illegitimate Click Activity.

120. Mr. K.P. Murphy has utilized the resources of Top Shelf IT to engage in the Illegitimate Click Activity.

121. Mr. K.E. Murphy has utilized the resources of Top Shelf IT to engage in the Illegitimate Click Activity.

122. Mr. Shavialevich has utilized the resources of Top Shelf IT to engage in the Illegitimate Click Activity.

123. The Conspiracy has utilized the resources of Top Shelf IT to engage in the Illegitimate Click Activity.

124. Top Shelf LLC deliberately and knowingly agreed with the other Conspirators that, at a level of frequency sufficient to inflict damage on Motogolf, Top Shelf LLC would engage in Illegitimate Click Activity

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

125. Top Shelf IT deliberately and knowingly agreed with the other Conspirators that, at a level of frequency sufficient to inflict damage on Motogolf, Top Shelf LLC would engage in Illegitimate Click Activity.

126. Mr. Sokolovich deliberately and knowingly agreed with the other Conspirators that, at a level of frequency sufficient to inflict damage on Motogolf, Mr. Sokolovich would engage in Illegitimate Click Activity

127. Mrs. Sokolovich deliberately and knowingly agreed with the other Conspirators that, at a level of frequency sufficient to inflict damage on Motogolf, Mr. Sokolovich would engage in Illegitimate Click Activity.

128. Mr. K.P. Murphy deliberately and knowingly agreed with the other Conspirators that, at a level of frequency sufficient to inflict damage on Motogolf, Mr. K.P. Murphy would engage in Illegitimate Click Activity.

129. Mr. K.E. Murphy deliberately and knowingly agreed with the other Conspirators that, at a level of frequency sufficient to inflict damage on Motogolf, Mr. K.E. Murphy would engage in Illegitimate Click Activity.

130. Mr. Shavialevich deliberately and knowingly agreed with the other Conspirators that, at a level of frequency sufficient to inflict damage on Motogolf, Mr. Shavialevich would engage in Illegitimate Click Activity.

131. Top Shelf LLC has engaged in Illegitimate Click Activity from, without limitation subject to further investigation, various locations in and near the state of Maine.

132. Top Shelf IT has engaged in Illegitimate Click Activity from, without limitation subject to further investigation, various locations in and near the state of Maine.

133. Mr. Sokolovich has engaged in Illegitimate Click Activity from, without limitation subject to further investigation, various locations in and near the state of Maine.

134. Mrs. Sokolovich has engaged in Illegitimate Click Activity from, without limitation subject to further investigation, various locations in and near the state of Maine.

135. Mr. K.P. Murphy has engaged in Illegitimate Click Activity from, without limitation subject to further investigation, various locations in and near the state of Maine.

136.     Mr. K.E. Murphy has engaged in Illegitimate Click Activity from, without limitation subject to further investigation, various locations in and near the state of Maine.

137.     Mr. Shavialevich has engaged in Illegitimate Click Activity from, without limitation subject to further investigation, various locations in and near the state of Maine.

138.     The Conspiracy has engaged in Illegitimate Click Activity from, without limitation subject to further investigation, various locations in and near the state of Maine.

139.     Since the commencement of the Illegitimate Click Activity, Top Shelf LLC has effectuated PPC Exhaustion with respect to Motogolf PPC Ads on at least a weekly basis and at a level of frequency sufficient to inflict damage on Motogolf.

140.     Since the commencement of the Illegitimate Click Activity, Top Shelf IT has effectuated PPC Exhaustion with respect to Motogolf PPC Ads on at least a weekly basis and at a level of frequency sufficient to inflict damage on Motogolf.

141.     Since the commencement of the Illegitimate Click Activity, Mr. Sokolovich has effectuated PPC Exhaustion with respect to Motogolf PPC Ads on at least a weekly basis and at a level of frequency sufficient to inflict damage on Motogolf.

142.     Since the commencement of the Illegitimate Click Activity, Mrs. Sokolovich has effectuated PPC Exhaustion with respect to Motogolf PPC Ads on at least a weekly basis and at a level of frequency sufficient to inflict damage on Motogolf.

143.     Since the commencement of the Illegitimate Click Activity, Mr. K.P. Murphy has effectuated PPC Exhaustion with respect to Motogolf PPC Ads on at least a weekly basis and at a level of frequency sufficient to inflict damage on Motogolf.

144.     Since the commencement of the Illegitimate Click Activity, Mr. K.E. Murphy  has effectuated PPC Exhaustion with respect to Motogolf PPC Ads on at least a weekly basis and at a level of frequency sufficient to inflict damage on Motogolf.

145.     Since the commencement of the Illegitimate Click Activity, Mr. Shavialevich has effectuated PPC Exhaustion with respect to Motogolf PPC Ads on at least a weekly basis and at a level of frequency sufficient to inflict damage on Motogolf.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

14

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

146.     Since the commencement of the Illegitimate Click Activity, the Conspiracy has effectuated PPC Exhaustion with respect to Motogolf PPC Ads on at least a weekly basis and at a level of frequency sufficient to inflict damage on Motogolf.

147.     Top Shelf LLC's effectuation, in whole or part, of PPC Exhaustion with respect to Motogolf PPC Ads has prevented Motogolf PPC Ads from being presented to Motogolf Authorized Users.

148.     Top Shelf IT's effectuation, in whole or part, of PPC Exhaustion with respect to Motogolf PPC Ads has prevented Motogolf PPC Ads from being presented to Motogolf Authorized Users.

149.     Mr. Sokolovich's effectuation, in whole or part, of PPC Exhaustion with respect to Motogolf PPC Ads has prevented Motogolf PPC Ads from being presented to Motogolf Authorized Users.

150.     Mrs. Sokolovich's effectuation, in whole or part, of PPC Exhaustion with respect to Motogolf PPC Ads has prevented Motogolf PPC Ads from being presented to Motogolf Authorized Users.

151.     Mr. K.P. Murphy's effectuation, in whole or part, of PPC Exhaustion with respect to Motogolf PPC Ads has prevented Motogolf PPC Ads from being presented to Motogolf Authorized Users.

152.     Mr. K.E. Murphy's effectuation, in whole or part, of PPC Exhaustion with respect to Motogolf PPC Ads has prevented Motogolf PPC Ads from being presented to Motogolf Authorized Users.

153.     Mr. Shavialevich's effectuation, in whole or part, of PPC Exhaustion with respect to Motogolf PPC Ads has prevented Motogolf PPC Ads from being presented to Motogolf Authorized Users.

154.     The Conspiracy's PPC Exhaustion with respect to Motogolf PPC Ads has prevented Motogolf PPC Ads from being presented to Motogolf Authorized Users.

155.     Top Shelf LLC's effectuation, in whole or part, of PPC Exhaustion with respect to Motogolf PPC Ads has caused Motogolf to experience PPC Exhaustion Price Increases.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

156.    Top Shelf IT's effectuation, in whole or part, of PPC Exhaustion with respect to Motogolf PPC Ads has caused Motogolf to experience PPC Exhaustion Price Increases.

157.    Mr. Sokolovich's effectuation, in whole or part, of PPC Exhaustion with respect to Motogolf PPC Ads has caused Motogolf to experience PPC Exhaustion Price Increases.

158.    Mrs. Sokolovich's effectuation, in whole or part, of PPC Exhaustion with respect to Motogolf PPC Ads has caused Motogolf to experience PPC Exhaustion Price Increases.

159.    Mr. K.P. Murphy's effectuation, in whole or part, of PPC Exhaustion with respect to Motogolf PPC Ads has caused Motogolf to experience PPC Exhaustion Price Increases.

160.    Mr. K.E. Murphy's effectuation, in whole or part, of PPC Exhaustion with respect to Motogolf PPC Ads has caused Motogolf to experience PPC Exhaustion Price Increases.

161.    Mr. Shavialevich's effectuation, in whole or part, of PPC Exhaustion with respect to Motogolf PPC Ads has caused Motogolf to experience PPC Exhaustion Price Increases.

162.    The Conspiracy's PPC Exhaustion with respect to Motogolf PPC Ads has caused Motogolf to experience PPC Exhaustion Price Increases.

163.    Top Shelf LLC's effectuation of PPC Exhaustion with respect to Motogolf PPC Ads has deprived Motogolf of any potential benefit of Motogolf PPC Ads reaching Motogolf Authorized Users, including, without limitation, PPC Benefits emanating from the Motogolf PPC Ads (such benefits the "Motogolf PPC Benefits").

164.    Top Shelf IT's effectuation of PPC Exhaustion with respect to Motogolf PPC Ads has deprived Motogolf of the Motogolf PPC Benefits.

165.    Mr. Sokolovich's effectuation of PPC Exhaustion with respect to Motogolf PPC Ads has deprived Motogolf of the Motogolf PPC Benefits.

166.    Mrs. Sokolovich's effectuation of PPC Exhaustion with respect to Motogolf PPC Ads has deprived Motogolf of the Motogolf PPC Benefits.

167.    Mr. K.P. Murphy's effectuation of PPC Exhaustion with respect to Motogolf PPC Ads has deprived Motogolf of the Motogolf PPC Benefits.

168.    Mr. K.E. Murphy's effectuation of PPC Exhaustion with respect to Motogolf PPC Ads has deprived Motogolf of the Motogolf PPC Benefits.

169.    Mr. Shavialevich's effectuation of PPC Exhaustion with respect to Motogolf PPC Ads has deprived Motogolf of the Motogolf PPC Benefits.

170.    The Conspiracy's effectuation of PPC Exhaustion with respect to Motogolf PPC Ads has deprived Motogolf of the Motogolf PPC Benefits.

171.    Top Shelf LLC was aware that Top Shelf LLC's Illegitimate Click Activity would ultimately deprive Motogolf of the Motogolf PPC Benefits.

172.    Top Shelf IT was aware that Top Shelf IT's Illegitimate Click Activity would ultimately deprive Motogolf of the Motogolf PPC Benefits.

173.    Mr. Sokolovich was aware that Mr. Sokolovich's Illegitimate Click Activity would ultimately deprive Motogolf of the Motogolf PPC Benefits.

174.    Mrs. Sokolovich was aware that Mrs. Sokolovich's Illegitimate Click Activity would ultimately deprive Motogolf of the Motogolf PPC Benefits.

175.    Mr. K.P. Murphy was aware that Mr. K.P. Murphy's Illegitimate Click Activity would ultimately deprive Motogolf of the Motogolf PPC Benefits.

176.    Mr. K.E. Murphy was aware that Mr. K.E. Murphy's Illegitimate Click Activity would ultimately deprive Motogolf of the Motogolf PPC Benefits.

177.    Mr. Shavialevich was aware that Mr. Shavialevich's Illegitimate Click Activity would ultimately deprive Motogolf of the Motogolf PPC Benefits.

178.    The Conspiracy was aware that the Conspiracy's Illegitimate Click Activity would ultimately deprive Motogolf of the Motogolf PPC Benefits.

179.    Top Shelf LLC was aware that if Top Shelf LLC continued Top Shelf LLC's engagement in the Illegitimate Click Activity over time, it would be more likely than not that Motogolf's share of the online golf equipment market would be diminished.

180.    Top Shelf IT was aware that if Top Shelf IT continued Top Shelf IT's engagement in the Illegitimate Click Activity over time, it would be more likely than not that Motogolf's share of the online golf equipment market would be diminished.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

181.   Mr. Sokolovich was aware that if Mr. Sokolovich continued Mr. Sokolovich's engagement in the Illegitimate Click Activity over time, it would be more likely than not that Motogolf's share of the online golf equipment market would be diminished.

182.   Mrs. Sokolovich was aware that if Mrs. Sokolovich continued Mrs. Sokolovich's engagement in the Illegitimate Click Activity over time, it would be more likely than not that Motogolf's share of the online golf equipment market would be diminished.

183.   Mr. K.P. Murphy was aware that if Mr. K.P. Murphy continued Mr. K.P. Murphy's engagement in the Illegitimate Click Activity over time, it would be more likely than not that Motogolf's share of the online golf equipment market would be diminished.

184.   Mr. K.E. Murphy was aware that if Mr. K.E. Murphy continued Mr. K.E. Murphy's engagement in the Illegitimate Click Activity over time, it would be more likely than not that Motogolf's share of the online golf equipment market would be diminished.

185.   Mr. Shavialevich was aware that if Mr. Shavialevich continued Mr. Shavialevich's engagement in the Illegitimate Click Activity over time, it would be more likely than not that Motogolf's share of the online golf equipment market would be diminished.

186.   The Conspiracy was aware that if the Conspiracy continued the Conspiracy'[s engagement in the Illegitimate Click Activity over time, it would be more likely than not that Motogolf's share of the online golf equipment market would be diminished.

187.   Top Shelf LLC was aware that if Top Shelf LLC continued Top Shelf LLC's engagement in the Illegitimate Click Activity over time and Motogolf's share of the online golf equipment market was thereby diminished, Top Shelf LLC's share of the online golf equipment market would be augmented.

188.   Top Shelf IT was aware that if Top Shelf IT continued Top Shelf IT's engagement in the Illegitimate Click Activity over time and Motogolf's share of the online golf equipment market was thereby diminished, Top Shelf LLC's share of the online golf equipment market would be augmented.

189.   Mr. Sokolovich was aware that if Mr. Sokolovich continued Mr. Sokolovich's engagement in the Illegitimate Click Activity over time and Motogolf's share of the online golf

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

equipment market was thereby diminished, Top Shelf LLC's share of the online golf equipment market would be augmented.

190.   Mrs. Sokolovich was aware that if Mrs. Sokolovich continued Mrs. Sokolovich's engagement in the Illegitimate Click Activity over time and Motogolf's share of the online golf equipment market was thereby diminished, Top Shelf LLC's share of the online golf equipment market would be augmented.

191.   Mr. K.P. Murphy was aware that if Mr. K.P. Murphy continued Mr. K.P. Murphy's engagement in the Illegitimate Click Activity over time and Motogolf's share of the online golf equipment market was thereby diminished, Top Shelf LLC's share of the online golf equipment market would be augmented.

192.   Mr. K.E. Murphy was aware that if Mr. K.E. Murphy continued Mr. K.E. Murphy's engagement in the Illegitimate Click Activity over time and Motogolf's share of the online golf equipment market was thereby diminished, Top Shelf LLC's share of the online golf equipment market would be augmented.

193.   Mr. Shavialevich was aware that if Mr. Shavialevich continued Mr. Shavialevich's engagement in the Illegitimate Click Activity over time and Motogolf's share of the online golf equipment market was thereby diminished, Top Shelf LLC's share of the online golf equipment market would be augmented.

194.   The Conspiracy was aware that if the Conspiracy continued the Conspiracy's engagement in the Illegitimate Click Activity over time and Motogolf's share of the online golf equipment market was thereby diminished, Top Shelf LLC's share of the online golf equipment market would be augmented.

195.   On or about March 7, 2019, Motogolf, through its then-counsel, caused a cease-and-desist letter (the "March 7 C&D Letter") to be delivered to Mr. Sokolovich, informing Mr. Sokolovich and Mr. Sokolovich's co-Conspirators that the Conspiracy was no longer authorized to click on Motogolf PPC Ads under any circumstances.

196.   Top Shelf LLC was aware of the contents of the March 7 C&D Letter.

197.   Top Shelf IT was aware of the contents of the March 7 C&D Letter.

19

198. Mr. Sokolovich was aware of the contents of the March 7 C&D Letter.

199. Mrs. Sokolovich was aware of the contents of the March 7 C&D Letter.

200. Mr. K.P. Murphy was aware of the contents of the March 7 C&D Letter.

201. Mr. K.E. Murphy was aware of the contents of the March 7 C&D Letter.

202. Mr. Shavialevich was aware of the contents of the March 7 C&D Letter.

203. The Conspiracy was aware of the contents of the March 7 C&D Letter.

204. Top Shelf LLC continued engaging in the Illegitimate Click Activity following March 7, 2019.

205. Top Shelf IT continued engaging in the Illegitimate Click Activity following March 7, 2019.

206. Mr. Sokolovich continued engaging in the Illegitimate Click Activity following March 7, 2019.

207. Mrs. Sokolovich continued engaging in the Illegitimate Click Activity following March 7, 2019.

208. Mr. K.P. Murphy continued engaging in the Illegitimate Click Activity following March 7, 2019.

209. Mr. K.E. Murphy continued engaging in the Illegitimate Click Activity following March 7, 2019.

210. Mr. Shavialevich continued engaging in the Illegitimate Click Activity following March 7, 2019.

211. The Conspiracy continued the Illegitimate Click Activity following March 7, 2019.

212. On or about August 13, 2019, Motogolf, through its then-counsel, caused a second cease-and-desist letter (the "August 13 C&D Letter") to be delivered to Mr. Sokolovich, reiterating to Mr. Sokolovich and Mr. Sokolovich's co-Conspirators that the Conspiracy was still no longer authorized to click on Motogolf PPC Ads under any circumstances.

213. Top Shelf LLC was aware of the contents of the August 13 C&D Letter.

214. Top Shelf IT was aware of the contents of the August 13 C&D Letter.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

215. Mr. Sokolovich was aware of the contents of the August 13 C&D Letter.

216. Mrs. Sokolovich was aware of the contents of the August 13 C&D Letter.

217. Mr. K.P. Murphy was aware of the contents of the August 13 C&D Letter.

218. Mr. K.E. Murphy was aware of the contents of the August 13 C&D Letter.

219. Mr. Shavialevich was aware of the contents of the August 13 C&D Letter.

220. The Conspiracy was aware of the contents of the August 13 C&D Letter.

221. Top Shelf LLC continued engaging in the Illegitimate Click Activity following August 13, 2019.

222. Top Shelf IT continued engaging in the Illegitimate Click Activity following August 13, 2019.

223. Mr. Sokolovich continued engaging in the Illegitimate Click Activity following August 13, 2019.

224. Mrs. Sokolovich continued engaging in the Illegitimate Click Activity following August 13, 2019.

225. Mr. K.P. Murphy continued engaging in the Illegitimate Click Activity following August 13, 2019.

226. Mr. K.E. Murphy continued engaging in the Illegitimate Click Activity following August 13, 2019.

227. Mr. Shavialevich continued engaging in the Illegitimate Click Activity following August 13, 2019.

228. The Conspiracy continued the Illegitimate Click Activity following August 13, 2019.

229. Top Shelf LLC has represented to Motogolf's vendors that Motogolf has inappropriately clicked on Top Shelf LLC's own online advertisements that are comparable to the Motogolf PPC Ads (the "Top Shelf PPC Ads").

230. Mr. Sokolovich has represented to Motogolf's vendors that Motogolf has inappropriately clicked on the Top Shelf PPC Ads.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

231. The Conspiracy has represented to Motogolf's vendors that Motogolf has inappropriately clicked on Top Shelf PPC Ads.

232. Motogolf has only effectuated clicking on Top Shelf PPC Ads to the limited extent necessary to forensically correlate the Illegitimate Click Activity with the Conspirators.

233. As a result of Top Shelf LLC's, Mr. Sokolovich's, and the Conspiracy's representations to Motogolf's vendors that Motogolf has inappropriately clicked on Top Shelf PPC Ads, at least one of Motogolf's vendors has withdrawn authorization to Motogolf for Motogolf to provide certain commercial premium merchandise to Motogolf's customers in connection with Motogolf's sales of products emanating from that vendor.

234. Top Shelf LLC has gained value from the Illegitimate Click Activity by diverting business from Motogolf to Top Shelf LLC.

235. Top Shelf IT has gained value from the Illegitimate Click Activity by diverting business from Motogolf to Top Shelf LLC.

236. Mr. Sokolovich has gained value from the Illegitimate Click Activity by diverting business from Motogolf to Top Shelf LLC.

237. Mrs. Sokolovich has gained value from the Illegitimate Click Activity by diverting business from Motogolf to Top Shelf LLC.

238. Mr. K.P. Murphy has gained value from the Illegitimate Click Activity by diverting business from Motogolf to Top Shelf LLC.

239. Mr. K.E. Murphy has gained value from the Illegitimate Click Activity by diverting business from Motogolf to Top Shelf LLC.

240. Mr. Shavialevich has gained value from the Illegitimate Click Activity by diverting business from Motogolf to Top Shelf LLC.

241. The Conspiracy has gained value from the Illegitimate Click Activity by diverting business from Motogolf to Top Shelf LLC.

242. Top Shelf LLC has gained value from the Illegitimate Click Activity by depriving Motogolf of the Motogolf PPC Benefits.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

243.    Top Shelf IT has gained value from the Illegitimate Click Activity by depriving Motogolf of the Motogolf PPC Benefits.

244.    Mr. Sokolovich has gained value from the Illegitimate Click Activity by depriving Motogolf of the Motogolf PPC Benefits.

245.    Mrs. Sokolovich has gained value from the Illegitimate Click Activity by depriving Motogolf of the Motogolf PPC Benefits.

246.    Mr. K.P. Murphy has gained value from the Illegitimate Click Activity by depriving Motogolf of the Motogolf PPC Benefits.

247.    Mr. K.E. Murphy has gained value from the Illegitimate Click Activity by depriving Motogolf of the Motogolf PPC Benefits.

248.    Mr. Shavialevich has gained value from the Illegitimate Click Activity by depriving Motogolf of the Motogolf PPC Benefits.

249.    The Conspiracy has gained value from the Illegitimate Click Activity by depriving Motogolf of the Motogolf PPC Benefits.

250.    Motogolf has sustained damages from the Illegitimate Click Activity in the form of increased costs of advertising; lost revenues; lost benefits of Motogolf's bargains with counterparties to PPC Contracts, including, without limitation, gaining new customers, and gaining valuable demographic data regarding potential customers who elected to click on Motogolf PPC Ads; and expenditures necessary to attempt to halt the Illegitimate Click Activity.

**FIRST CAUSE OF ACTION**

**VIOLATION OF COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030**

**(Against All Defendants)**

251.    Plaintiff realleges all of the above-stated allegations.

252.    Top Shelf LLC accessed, and/or exceeded authorized access to, a computer used in interstate commerce, specifically, the Motogolf Computers, on one or more of the occasions identified in Exhibit 1.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

253.     Top Shelf IT accessed, and/or exceeded authorized access to, a computer used in interstate commerce, specifically, the Motogolf Computers, on one or more of the occasions identified in Exhibit 1.

254.     Mr. Sokolovich accessed, and/or exceeded authorized access to, a computer used in interstate commerce, specifically, the Motogolf Computers, on one or more of the occasions identified in Exhibit 1.

255.     Mrs. Sokolovich accessed, and/or exceeded authorized access to, a computer used in interstate commerce, specifically, the Motogolf Computers, on one or more of the occasions identified in Exhibit 1.

256.     Mr. K.P. Murphy accessed, and/or exceeded authorized access to, a computer used in interstate commerce, specifically, the Motogolf Computers, on one or more of the occasions identified in Exhibit 1.

257.     Mr. K.E. Murphy accessed, and/or exceeded authorized access to, a computer used in interstate commerce, specifically, the Motogolf Computers, on one or more of the occasions identified in Exhibit 1.

258.     Mr. Shavialevich accessed, and/or exceeded authorized access to, a computer used in interstate commerce, specifically, the Motogolf Computers, on one or more of the occasions identified in Exhibit 1.

259.     On one or more of the occasions identified in Exhibit 1, Top Shelf LLC accessed, and/or exceeded authorized access to, the Motogolf Computers knowingly and with the intent to defraud Motogolf and the advertising platforms with which Motogolf does business by presenting the false impression that Top Shelf LLC was a *bona fide* intended customer of Motogolf.

260.     On one or more of the occasions identified in Exhibit 1, Top Shelf IT accessed, and/or exceeded authorized access to, the Motogolf Computers knowingly and with the intent to defraud Motogolf and the advertising platforms with which Motogolf does business by presenting the false impression that Top Shelf IT was a *bona fide* intended customer of Motogolf.

261.    On one or more of the occasions identified in Exhibit 1, Mr. Sokolovich accessed, and/or exceeded authorized access to, the Motogolf Computers knowingly and with the intent to defraud Motogolf and the advertising platforms with which Motogolf does business by presenting the false impression that Mr. Sokolovich was a *bona fide* intended customer of Motogolf.

262.    On one or more of the occasions identified in Exhibit 1, Mrs. Sokolovich accessed, and/or exceeded authorized access to, the Motogolf Computers knowingly and with the intent to defraud Motogolf and the advertising platforms with which Motogolf does business by presenting the false impression that Mrs. Sokolovich was a *bona fide* intended customer of Motogolf.

263.    On one or more of the occasions identified in Exhibit 1, Mr. K.P. Murphy accessed, and/or exceeded authorized access to, the Motogolf Computers knowingly and with the intent to defraud Motogolf and the advertising platforms with which Motogolf does business by presenting the false impression that Mr. K.P. Murphy was a *bona fide* intended customer of Motogolf.

264.    On one or more of the occasions identified in Exhibit 1, Mr. K.E. Murphy accessed, and/or exceeded authorized access to, the Motogolf Computers knowingly and with the intent to defraud Motogolf and the advertising platforms with which Motogolf does business by presenting the false impression that Mr. K.E. Murphy was a *bona fide* intended customer of Motogolf.

265.    On one or more of the occasions identified in Exhibit 1, Mr. Shavialevich accessed, and/or exceeded authorized access to, the Motogolf Computers knowingly and with the intent to defraud Motogolf and the advertising platforms with which Motogolf does business by presenting the false impression that Mr. Shavialevich was a *bona fide* intended customer of Motogolf

266.    Top Shelf LLC knew at least as early as March 7, 2019 that any potentially authorized access to the Motogolf Computers by Top Shelf LLC was terminated.

267.    Top Shelf IT knew at least as early as March 7, 2019 that any potentially authorized access to the Motogolf Computers by Top Shelf IT was terminated.

268.    Mr. Sokolovich knew at least as early as March 7, 2019 that any potentially authorized access to the Motogolf Computers by Mr. Sokolovich was terminated.

269.    Mrs. Sokolovich knew at least as early as March 7, 2019 that any potentially authorized access to the Motogolf Computers by Mrs. Sokolovich was terminated.

270.    Mr. K.P. Murphy knew at least as early as March 7, 2019 that any potentially authorized access to the Motogolf Computers by Mr. K.P. Murphy was terminated.

271.    Mr. K.E. Murphy knew at least as early as March 7, 2019 that any potentially authorized access to the Motogolf Computers by Mr. K.E. Murphy was terminated

272.    Mr. Shavialevich knew at least as early as March 7, 2019 that any potentially authorized access to the Motogolf Computers by Mr. Shavialevich was terminated.

273.    Top Shelf LLC knowingly and/or recklessly caused damage to Motogolf by way of the Illegitimate Click Activity and the resulting impairment to the integrity and availability of data reposed on the Motogolf Computers.

274.    Top Shelf IT knowingly and/or recklessly caused damage to Motogolf by way of the Illegitimate Click Activity and the resulting impairment to the integrity and availability of data reposed on the Motogolf Computers.

275.    Mr. Sokolovich knowingly and/or recklessly caused damage to Motogolf by way of the Illegitimate Click Activity and the resulting impairment to the integrity and availability of data reposed on the Motogolf Computers.

276.    Mrs. Sokolovich knowingly and/or recklessly caused damage to Motogolf by way of the Illegitimate Click Activity and the resulting impairment to the integrity and availability of data reposed on the Motogolf Computers.

277.    Mr. K.P. Murphy knowingly and/or recklessly caused damage to Motogolf by way of the Illegitimate Click Activity and the resulting impairment to the integrity and availability of data reposed on the Motogolf Computers.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

278.     Mr. K.E. Murphy knowingly and/or recklessly caused damage to Motogolf by way of the Illegitimate Click Activity and the resulting impairment to the integrity and availability of data reposed on the Motogolf Computers.

279.     Mr. Shavialevich knowingly and/or recklessly caused damage to Motogolf by way of the Illegitimate Click Activity and the resulting impairment to the integrity and availability of data reposed on the Motogolf Computers.

280.     Motogolf is entitled to compensatory damages pursuant to 18 U.S.C. § 1030(g).

281.     Motogolf has sustained and will continue to sustain irreparable harm as a result of the Conspirators' conduct as alleged herein and is entitled to injunctive and/or other equitable relief pursuant to 18 U.S.C. § 1030(g).

## SECOND CAUSE OF ACTION

## CONSPIRACY TO VIOLATE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030

## (Against All Defendants)

282.     Plaintiff realleges all of the above-stated allegations.

283.     The Conspiracy accessed, and/or exceeded authorized access to, a computer used in interstate commerce, specifically, the Motogolf Computers, on at least the occasions identified in Exhibit 1.

284.     On at least the occasions identified in Exhibit 1, the Conspiracy accessed, and/or exceeded authorized access to, the Motogolf Computers knowingly and with the intent to defraud Motogolf and the advertising platforms with which Motogolf does business by presenting the false impression that the Conspirators were *bona fide* intended customers of Motogolf.

285.     The Conspiracy knew at least as early as March 7, 2019 that any potentially authorized access to the Motogolf Computers by the Conspiracy was terminated.

286.     The Conspiracy knowingly and/or recklessly caused no less than $5,000 in damage to Motogolf by way of the Illegitimate Click Activity and the resulting impairment to the integrity and availability of data reposed on the Motogolf Computers.

287.     Motogolf is entitled to compensatory damages pursuant to 18 U.S.C. § 1030(g).

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

288.   Motogolf has sustained and will continue to sustain irreparable harm as a result of the Conspirators' conduct as alleged herein and is entitled to injunctive and/or other equitable relief pursuant to 18 U.S.C. § 1030(g).

### THIRD CAUSE OF ACTION

### AIDING AND ABETTING VIOLATIONS OF COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030

### (Against All Defendants)

289.   Plaintiff realleges all of the above-stated allegations.

290.   Each Defendant was aware of his, her, or its role in promoting violations of the Computer Fraud and Abuse Act against Motogolf at the time his, her, or its co-Defendants engaged in such conduct.

291.   Each Defendant was aware of his, her, or its role in promoting violations of the Computer Fraud and Abuse Act against Motogolf at the time each such Defendant engaged in such Defendant's own conduct.

292.   Each Defendant knowingly and substantially assisted such violations of the Computer Fraud and Abuse Act against Motogolf.

293.   Motogolf is entitled to compensatory damages pursuant to 18 U.S.C. § 1030(g).

294.   Motogolf has sustained and will continue to sustain irreparable harm as a result of Defendants' conduct as alleged herein and is entitled to injunctive and/or other equitable relief pursuant to 18 U.S.C. § 1030(g).

### FOURTH CAUSE OF ACTION

### VIOLATION OF NRS 205.4765

### (Against All Defendants)

295.   Plaintiff realleges all of the above-stated allegations.

296.   On one or more of the occasions identified in Exhibit 1, Top Shelf LLC interfered with, denied, and/or caused the denial of access to the Motogolf Computers to Motogolf Authorized Users.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

297.   On one or more of the occasions identified in Exhibit 1, Top Shelf IT interfered with, denied, and/or caused the denial of access to the Motogolf Computers to Motogolf Authorized Users.

298.   On one or more of the occasions identified in Exhibit 1, Mr. Sokolovich interfered with, denied, and/or caused the denial of access to the Motogolf Computers to Motogolf Authorized Users.

299.   On one or more of the occasions identified in Exhibit 1, Mrs. Sokolovich interfered with, denied, and/or caused the denial of access to the Motogolf Computers to Motogolf Authorized Users.

300.   On one or more of the occasions identified in Exhibit 1, Mr. K.P. Murphy interfered with, denied, and/or caused the denial of access to the Motogolf Computers to Motogolf Authorized Users.

301.   On one or more of the occasions identified in Exhibit 1, Mr. K.E. Murphy interfered with, denied, and/or caused the denial of access to the Motogolf Computers to Motogolf Authorized Users.

302.   On one or more of the occasions identified in Exhibit 1, Mr. Shavialevich interfered with, denied, and/or caused the denial of access to the Motogolf Computers to Motogolf Authorized Users.

303.   The Motogolf Authorized Users had the right to use the Motogolf Computers.

304.   Top Shelf LLC gained access to the Motogolf Computers following revocation by Motogolf of authorization for Top Shelf LLC to enjoy such access.

305.   Top Shelf IT gained access to the Motogolf Computers following revocation by Motogolf of authorization for Top Shelf IT to enjoy such access.

306.   Mr. Sokolovich gained access to the Motogolf Computers following revocation by Motogolf of authorization for Mr. Sokolovich to enjoy such access.

307.   Mrs. Sokolovich gained access to the Motogolf Computers following revocation by Motogolf of authorization for Mrs. Sokolovich to enjoy such access.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

29

308.     Mr. K.P. Murphy gained access to the Motogolf Computers following revocation by Motogolf of authorization for Mr. K.P. Murphy to enjoy such access.

309.     Mr. K.E. Murphy gained access to the Motogolf Computers following revocation by Motogolf of authorization for Mr. K.E. Murphy to enjoy such access

310.     Mr. Shavialevich gained access to the Motogolf Computers following revocation by Motogolf of authorization for Mr. Shavialevich to enjoy such access.

311.     Top Shelf LLC engaged in denial of access to the Motogolf Computers to Motogolf Authorized Users knowingly, willfully, maliciously, and without authorization.

312.     Top Shelf IT engaged in denial of access to the Motogolf Computers to Motogolf Authorized Users knowingly, willfully, maliciously, and without authorization.

313.     Mr. Sokolovich engaged in denial of access to the Motogolf Computers to Motogolf Authorized Users knowingly, willfully, maliciously, and without authorization.

314.     Mrs. Sokolovich engaged in denial of access to the Motogolf Computers to Motogolf Authorized Users knowingly, willfully, maliciously, and without authorization.

315.     Mr. K.P. Murphy engaged in denial of access to the Motogolf Computers to Motogolf Authorized Users knowingly, willfully, maliciously, and without authorization.

316.     Mr. K.E. Murphy engaged in denial of access to the Motogolf Computers to Motogolf Authorized Users knowingly, willfully, maliciously, and without authorization.

317.     Mr. Shavialevich engaged in denial of access to the Motogolf Computers to Motogolf Authorized Users knowingly, willfully, maliciously, and without authorization.

318.     Top Shelf LLC knowingly, willfully, and maliciously gained access to the Motogolf Computers following revocation by Motogolf of authorization for Top Shelf LLC to enjoy such access.

319.     Top Shelf IT knowingly, willfully, and maliciously gained access to the Motogolf Computers following revocation by Motogolf of authorization for Top Shelf IT to enjoy such access.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

320.     Mr. Sokolovich knowingly, willfully, and maliciously gained access to the Motogolf Computers following revocation by Motogolf of authorization for Mr. Sokolovich to enjoy such access.

321.     Mrs. Sokolovich knowingly, willfully, and maliciously gained access to the Motogolf Computers following revocation by Motogolf of authorization for Mrs. Sokolovich to enjoy such access.

322.     Mr. K.P. Murphy knowingly, willfully, and maliciously gained access to the Motogolf Computers following revocation by Motogolf of authorization for Mr. K.P. Murphy to enjoy such access.

323.     Mr. K.E. Murphy knowingly, willfully, and maliciously gained access to the Motogolf Computers following revocation by Motogolf of authorization for Mr. K.E. Murphy to enjoy such access.

324.     Mr. Shavialevich knowingly, willfully, and maliciously gained access to the Motogolf Computers following revocation by Motogolf of authorization for Mr. Shavialevich to enjoy such access.

325.     Motogolf has sustained response costs, loss, and injury as a result of Defendants' knowing, willful, and malicious actions alleged herein.

326.     Motogolf has incurred attorneys' fees and costs of suit as a result of Defendants' knowing, willful, and malicious actions alleged herein.

327.     Motogolf is entitled to punitive damages from Defendants pursuant to NRS 205.511(b).

## FIFTH CAUSE OF ACTION

## CONSPIRACY TO VIOLATE NRS 205.4765

### (Against All Defendants)

328.     Plaintiff realleges all of the above-stated allegations.

329.     On at least the occasions identified in Exhibit 1, the Conspiracy interfered with, denied, and/or caused the denial of access to the Motogolf Computers to Motogolf Authorized Users.

31

330.    The Motogolf Authorized Users had the right to use the Motogolf Computers.

331.    The Conspiracy gained access to the Motogolf Computers following revocation by Motogolf of authorization for the Conspiracy to enjoy such access

332.    The Conspiracy engaged in denial of access to the Motogolf Computers to Motogolf Authorized Users knowingly, willfully, maliciously, and without authorization.

333.    The Conspiracy knowingly, willfully, and maliciously gained access to the Motogolf Computers following revocation by Motogolf of authorization for the Conspiracy to enjoy such access.

334.    Motogolf has sustained response costs, loss, and injury as a result of the Conspiracy's knowing, willful, and malicious actions alleged herein.

335.    Motogolf has incurred attorneys' fees and costs of suit as a result of the Conspiracy's knowing, willful, and malicious actions alleged herein.

336.    Motogolf is entitled to punitive damages from the Conspirators pursuant to NRS 205.511(b).

## SIXTH CAUSE OF ACTION

## AIDING AND ABETTING VIOLATIONS OF NRS 205.4765

### (Against All Defendants)

337.    Plaintiff realleges all of the above-stated allegations.

338.    Each Defendant was aware of his, her, or its role in promoting violations of NRS 205.4765 against Motogolf at the time his, her, or its co-Defendants engaged in such conduct.

339.    Each Defendant was aware of his, her, or its role in promoting violations of the Computer Fraud and Abuse Act against Motogolf at the time each such Defendant engaged in such Defendant's own conduct.

340.    Each Defendant knowingly and substantially assisted such violations of NRS 205.4765 against Motogolf.

341.    Motogolf has sustained response costs, loss, and injury as a result of Defendants' knowing, willful, and malicious actions alleged herein.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

342.     Motogolf has incurred attorneys' fees and costs of suit as a result of Defendants' knowing, willful, and malicious actions alleged herein.

343.     Motogolf is entitled to punitive damages from Defendants pursuant to NRS 205.511(b).

### SEVENTH CAUSE OF ACTION

### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS UNDER NEVADA COMMON LAW

### (Against Top Shelf LLC and Mr. Sokolovich)

344.     Plaintiff realleges all of the above-stated allegations.

345.     Motogolf had valid and existing contracts and/or courses of mutual performance with one or more vendors of golf equipment at all times during which the Conspiracy was effectuating the Illegitimate Click Activity.

346.     Top Shelf LLC was aware of Motogolf's valid and existing contracts and/or courses of mutual performance with vendors of golf equipment.

347.     Mr. Sokolovich was aware of Motogolf's valid and existing contracts and/or courses of mutual performance with vendors of golf equipment.

348.     Top Shelf LLC disrupted Motogolf's contractual relationships and/or courses of mutual performance.

349.     Mr. Sokolovich disrupted Motogolf's contractual relationships and/or courses of mutual performance.

350.     Motogolf has suffered actual harm as a result of Defendants' actions as alleged herein.

### EIGHTH CAUSE OF ACTION

### AIDING AND ABETTING INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS UNDER NEVADA COMMON LAW

### (Against Top Shelf IT and Mrs. Sokolovich)

351.     Plaintiff realleges all of the above-stated allegations.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

352.     Top Shelf IT was aware of its role in promoting intentional interference with Motogolf's contractual relationships and/or courses of mutual performance in violation of Nevada law.

353.     Mrs. Sokolovich was aware of her role in promoting intentional interference with Motogolf's contractual relationships and/or courses of mutual performance in violation of Nevada law.

354.     Top Shelf IT was aware of its role in such intentional interference with Motogolf's contractual relationships and/or courses of mutual performance at the time Mr. Sokolovich and Top Shelf LLC engaged in Mr. Sokolovich's and Top Shelf LLC's own conduct.

355.     Mrs. Sokolovich was aware of her role in such intentional interference with Motogolf's contractual relationships and/or courses of mutual performance at the time Mr. Sokolovich and Top Shelf LLC engaged in Mr. Sokolovich's and Top Shelf LLC's own conduct.

356.     Top Shelf IT knowingly and substantially assisted such intentional interference with Motogolf's contractual relationships and/or courses of mutual performance.

357.     Mrs. Sokolovich knowingly and substantially assisted such intentional interference with Motogolf's contractual relationships and/or courses of mutual performance.

358.     Motogolf has suffered actual harm as a result of Top Shelf IT's and Mrs. Sokolovich's actions as alleged herein.

### NINTH CAUSE OF ACTION

### INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE UNDER

### NEVADA COMMON LAW

### (Against All Defendants)

359.     Plaintiff realleges all of the above-stated allegations.

360.     Motogolf had prospective contractual relationships with third parties, including, without limitation, prospective Motogolf customers.

361.     Top Shelf LLC knew that Motogolf had prospective contractual relationships with third parties, including, without limitation, prospective Motogolf customers.

362.   Top Shelf IT knew that Motogolf had prospective contractual relationships with third parties, including, without limitation, prospective Motogolf customers.

363.   Mr. Sokolovich knew that Motogolf had prospective contractual relationships with third parties, including, without limitation, prospective Motogolf customers.

364.   Mrs. Sokolovich knew that Motogolf had prospective contractual relationships with third parties, including, without limitation, prospective Motogolf customers.

365.   Mr. K.P. Murphy knew that Motogolf had prospective contractual relationships with third parties, including, without limitation, prospective Motogolf customers.

366.   Mr. K.E. Murphy knew that Motogolf had prospective contractual relationships with third parties, including, without limitation, prospective Motogolf customers.

367.   Mr. Shavialevich knew that Motogolf had prospective contractual relationships with third parties, including, without limitation, prospective Motogolf customers.

368.   Top Shelf LLC intended to harm Motogolf by preventing Motogolf from forming relationships with, without limitation, prospective Motogolf customers.

369.   Top Shelf IT intended to harm Motogolf by preventing Motogolf from forming relationships with, without limitation, prospective Motogolf customers.

370.   Mr. Sokolovich intended to harm Motogolf by preventing Motogolf from forming relationships with, without limitation, prospective Motogolf customers.

371.   Mrs. Sokolovich intended to harm Motogolf by preventing Motogolf from forming relationships with, without limitation, prospective Motogolf customers.

372.   Mr. K.P. Murphy intended to harm Motogolf by preventing Motogolf from forming relationships with, without limitation, prospective Motogolf customers.

373.   Mr. K.E. Murphy intended to harm Motogolf by preventing Motogolf from forming relationships with, without limitation, prospective Motogolf customers.

374.   Mr. Shavialevich intended to harm Motogolf by preventing Motogolf from forming relationships with, without limitation, prospective Motogolf customers.

375.   Top Shelf LLC's conduct in effectuating the Illegitimate Click Activity was neither privileged nor justified.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

376. Top Shelf IT's conduct in effectuating the Illegitimate Click Activity was neither privileged nor justified.

377. Mr. Sokolovich's conduct in effectuating the Illegitimate Click Activity was neither privileged nor justified.

378. Mrs. Sokolovich's conduct in effectuating the Illegitimate Click Activity was neither privileged nor justified.

379. Mr. K.P. Murphy's conduct in effectuating the Illegitimate Click Activity was neither privileged nor justified.

380. Mr. K.E. Murphy's conduct in effectuating the Illegitimate Click Activity was neither privileged nor justified.

381. Mr. Shavialevich's conduct in effectuating the Illegitimate Click Activity was neither privileged nor justified.

382. Motogolf has suffered actual harm as a result of Defendants' actions as alleged herein.

## TENTH CAUSE OF ACTION

## CONSPIRACY TO INTENTIONALLY INTERFERE WITH PROSPECTIVE ECONOMIC ADVANTAGE UNDER NEVADA COMMON LAW

### (Against All Defendants)

383. Plaintiff realleges all of the above-stated allegations.

384. The Conspiracy knew that Motogolf had prospective contractual relationships with third parties, including, without limitation, prospective Motogolf customers.

385. The Conspiracy intended to harm Motogolf by preventing Motogolf from forming relationships with, without limitation, prospective Motogolf customers.

386. The Conspiracy's collective conduct in effectuating the Illegitimate Click Activity was neither privileged nor justified.

387. Motogolf has suffered actual harm as a result of Defendants' actions as alleged herein.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

**ELEVENTH CAUSE OF ACTION**

**AIDING AND ABETTING INTENTIONAL INTERFERENCE WITH PROSPECTIVE**

**ECONOMIC ADVANTAGE UNDER NEVADA COMMON LAW**

**(Against All Defendants)**

388.     Plaintiff realleges all of the above-stated allegations.

389.     Each Defendant was aware of his, her, or its role in promoting intentional inter with Motogolf's prospective contractual relationships in violation of Nevada law.

390.     Each Defendant was aware of his, her, or its role in promoting such intentional interference with Motogolf's prospective contractual relationships at the time each such Defendant engaged in such conduct.

391.     Each Defendant knowingly and substantially assisted such intentional interference with Motogolf's prospective contractual relationships.

392.     Motogolf has suffered actual harm as a result of Defendants' actions as alleged herein.

**TWELFTH CAUSE OF ACTION**

**UNFAIR TRADE PRACTICES (15 U.S.C. § 1125(A)(1))**

**(Against All Defendants)**

393.     Plaintiff realleges all of the above-stated allegations.

394.     Top Shelf LLC made the false or misleading representation of fact in commerce that Top Shelf LLC was a legitimate potential customer or other business relationship of Motogolf clicking on Motogolf PPC Ads for the legitimate acquisition of information regarding Motogolf's goods for sale.

395.     Top Shelf IT made the false or misleading representation of fact in commerce that Top Shelf IT was a legitimate potential customer or other business relationship of Motogolf clicking on Motogolf PPC Ads for the legitimate acquisition of information regarding Motogolf's goods for sale.

396.     Mr. Sokolovich made the false or misleading representation of fact in commerce that Mr. Sokolovich was a legitimate potential customer or other business relationship of

Motogolf clicking on Motogolf PPC Ads for the legitimate acquisition of information regarding Motogolf's goods for sale.

397.    Mrs. Sokolovich made the false or misleading representation of fact in commerce that Mrs. Sokolovich was a legitimate potential customer or other business relationship of Motogolf clicking on Motogolf PPC Ads for the legitimate acquisition of information regarding Motogolf's goods for sale.

398.    Mr. K.P. Murphy made the false or misleading representation of fact in commerce that Mr. K.P. Murphy was a legitimate potential customer or other business relationship of Motogolf clicking on Motogolf PPC Ads for the legitimate acquisition of information regarding Motogolf's goods for sale.

399.    Mr. K.E. Murphy made the false or misleading representation of fact in commerce that Mr. K.E. Murphy was a legitimate potential customer or other business relationship of Motogolf clicking on Motogolf PPC Ads for the legitimate acquisition of information regarding Motogolf's goods for sale.

400.    Mr. Shavialevich made the false or misleading representation of fact in commerce that Mr. Shavialevich was a legitimate potential customer or other business relationship of Motogolf clicking on Motogolf PPC Ads for the legitimate acquisition of information regarding Motogolf's goods for sale.

401.    In fact, Top Shelf LLC was not a legitimate potential customer or other business relationship of Motogolf, and clicked on Motogolf PPC Ads for purposes of frustrating Motogolf's advertising by way of PPC Exhaustion. depriving Motogolf of the benefits of Motogolf's PPC Contracts, causing financial damages to Motogolf, and enhancing Top Shelf LLC's own business at the expense of Motogolf.

402.    In fact, Top Shelf IT was not a legitimate potential customer or other business relationship of Motogolf, and clicked on Motogolf PPC Ads for purposes of frustrating Motogolf's advertising by way of PPC Exhaustion. depriving Motogolf of the benefits of Motogolf's PPC Contracts, causing financial damages to Motogolf, and enhancing Top Shelf LLC's business at the expense of Motogolf.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

403. In fact, Mr. Sokolovich was not a legitimate potential customer or other business relationship of Motogolf, and clicked on Motogolf PPC Ads for purposes of frustrating Motogolf's advertising by way of PPC Exhaustion. depriving Motogolf of the benefits of Motogolf's PPC Contracts, causing financial damages to Motogolf, and enhancing Top Shelf LLC's business at the expense of Motogolf.

404. In fact, Mrs. Sokolovich was not a legitimate potential customer or other business relationship of Motogolf, and clicked on Motogolf PPC Ads for purposes of frustrating Motogolf's advertising by way of PPC Exhaustion. depriving Motogolf of the benefits of Motogolf's PPC Contracts, causing financial damages to Motogolf, and enhancing Top Shelf LLC's business at the expense of Motogolf.

405. In fact, Mr. K.P. Murphy was not a legitimate potential customer or other business relationship of Motogolf, and clicked on Motogolf PPC Ads for purposes of frustrating Motogolf's advertising by way of PPC Exhaustion. depriving Motogolf of the benefits of Motogolf's PPC Contracts, causing financial damages to Motogolf, and enhancing Top Shelf LLC's business at the expense of Motogolf.

406. In fact, Mr. K.E. Murphy was not a legitimate potential customer or other business relationship of Motogolf, and clicked on Motogolf PPC Ads for purposes of frustrating Motogolf's advertising by way of PPC Exhaustion. depriving Motogolf of the benefits of Motogolf's PPC Contracts, causing financial damages to Motogolf, and enhancing Top Shelf LLC's business at the expense of Motogolf.

407. In fact, Mr. Shavialevich was not a legitimate potential customer or other business relationship of Motogolf, and clicked on Motogolf PPC Ads for purposes of frustrating Motogolf's advertising by way of PPC Exhaustion. depriving Motogolf of the benefits of Motogolf's PPC Contracts, causing financial damages to Motogolf, and enhancing Top Shelf LLC's business at the expense of Motogolf.

408. By making Top Shelf LLC's false or misleading representations of fact in commerce, Top Shelf LLC misrepresented the nature, characteristics, and qualities of Top Shelf LLC's commercial activities.

409.    By making Top Shelf IT's false or misleading representations of fact in commerce, Top Shelf IT misrepresented the nature, characteristics, and qualities of Top Shelf IT's commercial activities.

410.    By making Mr. Sokolovich's false or misleading representations of fact in commerce, Mr. Sokolovich misrepresented the nature, characteristics, and qualities of Mr. Sokolovich's commercial activities.

411.    By making Mrs. Sokolovich's false or misleading representations of fact in commerce, Mrs. Sokolovich misrepresented the nature, characteristics, and qualities of Mrs. Sokolovich's commercial activities.

412.    By making Mr. K.P. Murphy's false or misleading representations of fact in commerce, Mr. K.P. Murphy misrepresented the nature, characteristics, and qualities of Mr. K.P. Murphy's commercial activities.

413.    By making Mr. K.E. Murphy's false or misleading representations of fact in commerce, Mr. K.E. Murphy misrepresented the nature, characteristics, and qualities of Mr. K.E. Murphy's commercial activities.

414.    By making Mr. Shavialevich's false or misleading representations of fact in commerce, Mr. Shavialevich misrepresented the nature, characteristics, and qualities of Mr. Shavialevich's commercial activities.

415.    Motogolf has sustained damages as a result of Defendants' activities alleged herein.

416.    Motogolf is entitled to legal and equitable relief as a result of Defendants' activities alleged herein.

## THIRTEENTH CAUSE OF ACTION

## CONSPIRACY TO ENGAGE IN UNFAIR TRADE PRACTICES (15 U.S.C. § 1125(A)(1))

## (Against All Defendants)

417.    Plaintiff realleges all of the above-stated allegations.

418.    The Conspiracy made the false or misleading representation of fact in commerce that the Conspiracy was a legitimate potential customer or other business relationship of

40

Motogolf clicking on Motogolf PPC Ads for the legitimate acquisition of information regarding Motogolf's goods for sale.

419.    In fact, the Conspiracy was not a legitimate potential customer or other business relationship of Motogolf, and clicked on Motogolf PPC Ads for purposes of frustrating Motogolf's advertising by way of PPC Exhaustion. depriving Motogolf of the benefits of Motogolf's PPC Contracts, causing financial damages to Motogolf, and enhancing Top Shelf LLC's business at the expense of Motogolf

420.    By making the Conspiracy's false or misleading representations of fact in commerce, the Conspiracy misrepresented the nature, characteristics, and qualities of the Conspiracy's commercial activities.

421.    Motogolf has sustained damages as a result of the Conspiracy's activities alleged herein.

422.    Motogolf is entitled to legal and equitable relief as a result of the Conspiracy's activities alleged herein.

### FOURTEENTH CAUSE OF ACTION

### AIDING AND ABETTING UNFAIR TRADE PRACTICES UNDER 15 U.S.C. § 1125(A)(1)

### (Against All Defendants)

423.    Plaintiff realleges all of the above-stated allegations.

424.    Each Defendant was aware of his, her, or its role in promoting unfair trade practices under 15 U.S.C. § 1125(a)(1) to Motogolf's detriment at the time his, her, or its co-Defendants engaged in such conduct.

425.    Each Defendant was aware of his, her, or its role in promoting such unfair trade practices at the time each such Defendant engaged in such Defendant's own conduct.

426.    Each Defendant knowingly and substantially assisted such unfair trade practices to Motogolf's detriment.

427.    Motogolf has suffered actual harm as a result of Defendants' actions as alleged herein.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

428.   Motogolf is entitled to legal and equitable relief as a result of Defendants' activities alleged herein.

### FIFTEENTH CAUSE OF ACTION

### DECEPTIVE TRADE PRACTICES UNDER NRS 598.0915

### (Against All Defendants)

429.   Plaintiff realleges all of the above-stated allegations.

430.   Top Shelf LLC engaged in the Illegitimate Click Activity in the course of Top Shelf LLC's business or occupation.

431.   Top Shelf IT engaged in the Illegitimate Click Activity as a co-conspirator with, and/or as an aide and abettor to, Top Shelf LLC in the course of Top Shelf LLC's business or occupation.

432.   Mr. Sokolovich engaged in the Illegitimate Click Activity as a co-conspirator with, and/or as an aide and abettor to, Top Shelf LLC in the course of Top Shelf LLC's business or occupation.

433.   Mrs. Sokolovich engaged in the Illegitimate Click Activity as a co-conspirator with, and/or as an aide and abettor to, Top Shelf LLC in the course of Top Shelf LLC's business or occupation.

434.   Mr. K.P. Murphy engaged in the Illegitimate Click Activity as a co-conspirator with , and/or as an aide and abettor to, Top Shelf LLC in the course of Top Shelf LLC's business or occupation.

435.   Mr. K.E. Murphy engaged in the Illegitimate Click Activity as a co-conspirator with, and/or as an aide and abettor to, Top Shelf LLC in the course of Top Shelf LLC's business or occupation.

436.   Mr. Shavialevich engaged in the Illegitimate Click Activity as a co-conspirator with, and/or as an aide and abettor to, Top Shelf LLC in the course of Top Shelf LLC's business or occupation.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

437.    The Illegitimate Click Activity constitutes the repeated making of false representations in transactions:  specifically, that the Defendants, when clicking on the Motogolf PPC Ads, are legitimate potential customers of Motogolf.

438.    Top Shelf LLC is engaged knowingly in the Illegitimate Click Activity.

439.    Top Shelf IT is engaged knowingly in the Illegitimate Click Activity.

440.    Mr. Sokolovich is engaged knowingly in the Illegitimate Click Activity.

441.    Mrs. Sokolovich is engaged knowingly in the Illegitimate Click Activity.

442.    Mr. K.P. Murphy is engaged knowingly in the Illegitimate Click Activity.

443.    Mr. K.E. Murphy is engaged knowingly in the Illegitimate Click Activity.

444.    Mr. Shavialevich is engaged knowingly in the Illegitimate Click Activity.

445.    The Conspiracy is engaged knowingly in the Illegitimate Click Activity.

446.    Top Shelf IT knowingly and substantially assisted Top Shelf LLC in the Illegitimate Click Activity.

447.    Mr. Sokolovich knowingly and substantially assisted Top Shelf LLC in the Illegitimate Click Activity.

448.    Mrs. Sokolovich knowingly and substantially assisted Top Shelf LLC in the Illegitimate Click Activity.

449.    Mr. K.P. Murphy knowingly and substantially assisted Top Shelf LLC in the Illegitimate Click Activity.

450.    Mr. K.E. Murphy knowingly and substantially assisted Top Shelf LLC in the Illegitimate Click Activity.

451.    Mr. Shavialevich knowingly and substantially assisted Top Shelf LLC in the Illegitimate Click Activity.

452.    Motogolf is a victim of Defendants' unlawful conduct and is entitled to a private right of action against Defendants under NRS 41.600(1).

453.    Motogolf is entitled to compensatory damages emanating from the Illegitimate Click Activity.

454.    Motogolf is entitled to such equitable relief as this Court deems appropriate.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

455. Motogolf is entitled to Motogolf's costs in this action and reasonable attorney fees.

## SIXTEENTH CAUSE OF ACTION

## CONSPIRACY TO ENGAGE IN DECEPTIVE TRADE PRACTICES UNDER NRS 598.0915

## (Against All Defendants)

456. Plaintiff realleges all of the above-stated allegations.

457. Top Shelf LLC engaged in the Illegitimate Click Activity in the course of Top Shelf LLC's business or occupation.

458. The Illegitimate Click Activity constitutes the repeated making of false representations in transactions: specifically, that Top Shelf LLC's co-Conspirators, when clicking on the Motogolf PPC Ads, are legitimate potential customers of Motogolf.

459. The Conspiracy is engaged knowingly in the Illegitimate Click Activity.

460. Motogolf is a victim of the Conspiracy's unlawful conduct and is entitled to a private right of action against the Conspiracy under NRS 41.600(1).

461. Motogolf is entitled to compensatory damages emanating from the Illegitimate Click Activity.

462. Motogolf is entitled to such equitable relief as this Court deems appropriate.

463. Motogolf is entitled to Motogolf's costs in this action and reasonable attorney fees.

## SEVENTEENTH CAUSE OF ACTION

## NEVADA RICO, NRS 207.400

## (Against All Defendants)

464. Plaintiff realleges all of the above-stated allegations.

465. The Illegitimate Click Activity constitutes the taking of property from another under circumstances not amounting to robbery.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

44

466.     The Illegitimate Click Activity encompasses more than two crimes related to racketeering that have the same pattern, intent, results, accomplices, victim, and methods of commission.

467.     The Illegitimate Click Activity did not begin until after July 1, 1983.

468.     The Illegitimate Click Activity encompasses more than two crimes occurring within five years of one another.

469.     Top Shelf LLC is a legal entity constituting an "enterprise" under NRS 207.380(1).

470.      Top Shelf IT is a corporation constituting an "enterprise" under NRS 207.380(1).

471.     Defendant Mr. Sokolovich has maintained Mr. Sokolovich's interest in and control of Top Shelf LLC through racketeering activity, specifically the Illegitimate Click Activity.

472.     Defendant Mrs. Sokolovich has maintained Mrs. Sokolovich's interest in and control of Top Shelf LLC through racketeering activity, specifically the Illegitimate Click Activity

473.     Defendant Mr. Sokolovich has maintained Mr. Sokolovich's interest in and control of Top Shelf IT through racketeering activity, specifically the Illegitimate Click Activity.

474.     Defendant Mrs. Sokolovich has maintained Msr. Sokolovich's interest in and control of Top Shelf IT through racketeering activity, specifically the Illegitimate Click Activity

475.     Defendant Mr. K.P. Murphy is associated with Top Shelf LLC to conduct and engage directly in racketeering activity, specifically the Illegitimate Click Activity, through the affairs of Top Shelf LLC.

476.     Defendant Mr. K.E. Murphy is associated with Top Shelf LLC to conduct and engage directly in racketeering activity, specifically the Illegitimate Click Activity, through the affairs of Top Shelf LLC.

477.     Defendant Mr. Shavialevich is associated with Top Shelf LLC to conduct and engage directly in racketeering activity, specifically the Illegitimate Click Activity, through the affairs of Top Shelf LLC.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

478.    Defendant Mr. K.P. Murphy is associated with Top Shelf IT to conduct and engage directly in racketeering activity, specifically the Illegitimate Click Activity, through the affairs of Top Shelf IT.

479.    Defendant Mr. K.E. Murphy is associated with Top Shelf IT to conduct and engage directly in racketeering activity, specifically the Illegitimate Click Activity, through the affairs of Top Shelf IT.

480.    Defendant Mr. Shavialevich is associated with Top Shelf IT to conduct and engage directly in racketeering activity, specifically the Illegitimate Click Activity, through the affairs of Top Shelf IT.

481.    Motogolf has been injured in Motogolf's business through Defendants' racketeering activity.

482.    Motogolf is entitled to three times Motogolf's actual damages sustained as a result of Defendants' racketeering activity.

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899

483.   Motogolf is entitled to Motogolf's attorneys' fees, costs of litigation, and costs of investigation incurred as a result of Defendants' racketeering activity.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant the following relief:

1.   Compensatory damages on all causes of action, subject to trebling as a result of Defendants' acts in violation of NRS 207.400;

2.   Punitive damages for Defendants' violations of, without limitation, 18 U.S.C. § 1030;

3.   Attorneys' fees;

4.   Costs of litigation;

5.   Costs of investigation as a result of Defendants' acts in violation of NRS 207.400;

6.   Equitable relief, including preliminary and permanent injunctive relief against further effectuation of the Illegitimate Click Activity;

7.   Any other relief to which this Court may deem Plaintiff entitled.

## DEMAND FOR JURY TRIAL

Motogolf hereby requests trial by jury on all causes of action so triable.

Respectfully submitted this 10th day of April, 2020.

GIBSON LOWRY LLP

By   /s/ J.D. Lowry.

STEVEN A. GIBSON, ESQ.
Nevada Bar No. 6656
sgibson@gibsonlowry.com
JODI DONETTA LOWRY, ESQ.
Nevada Bar No. 7798
jlowry@gibsonlowry.com
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
(702) 541-7888 Telephone
(702) 541-7899 Facsimile
*Attorneys for Plaintiff*

GIBSON LOWRY LLP
7495 West Azure Drive, Suite 233
Las Vegas, Nevada 89130
Main (702) 541-7888 • Fax (702) 541-7899