UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MOTOGOLF.COM, LLC, | Case No.: 2:20-cv-00674-APG-EJY |
| Plaintiff | **Order** |
| v. | [ECF Nos. 74, 85] |
| TOP SHELF GOLF, LLC, et al., | |
| Defendants | |

Plaintiff Motogolf.com, LLC used online advertisements that were governed by a pay-per-click contract wherein ads would stop appearing to others if they were clicked a certain number of times in a given period. Motogolf contends that defendants Top Shelf Golf, LLC, Top Shelf IT Solutions, Inc., Ivan Sokolovich, and Inna Sokolovich[1] sought out Motogolf's ads and repeatedly clicked on them, causing Motogolf's ads to disappear sooner and increasing Motogolf's advertising budget. Motogolf also alleges that Top Shelf and Ivan Sokolovich interfered with Motogolf's vendor relationships by telling vendors that Motogolf had disrupted Top Shelf's online advertisements in the same fashion.

Motogolf sued the defendants for violations of the Computer Fraud and Abuse Act (CFAA), the Nevada Computer Crimes Law (NCCL), the Lanham Act, the Nevada Deceptive Trade Protection Act (NDTPA), and Nevada's Racketeer Influenced and Corrupt Organizations (RICO) law, and for intentional interference with contractual relations and intentional

---

[1] These are the remaining defendants in this action. Defendants Patrick Murphy (erroneously named Kevin P. Murphy), Kevin E. Murphy, and Aliaksandr Shavialevich have already been dismissed. ECF Nos. 47; 51.

interference with prospective economic advantage. Motogolf further alleged that the defendants engaged in a conspiracy and aided and abetted violations of these laws.

I previously dismissed the CFAA and NCCL claims because Motogolf had not plausibly alleged the defendants accessed Motogolf's website without authorization. ECF No. 68. I dismissed the intentional interference with a contractual relationship claim because Motogolf had not identified any vendor (and therefore any contractual relationship) that the defendants allegedly interfered with. I dismissed the NDTPA and Lanham Act claims because Motogolf did not plausibly allege the defendants' click activity was likely to deceive or cause confusion. I dismissed the Nevada RICO claim because Motogolf had not plausibly alleged that the defendants' conduct involved taking property. I also dismissed the conspiracy and aiding and abetting claims related to the underlying claims I dismissed. I granted Motogolf leave to amend the dismissed claims.

Motogolf filed an amended complaint that asserts the same claims with only minor alterations. ECF No. 71. The defendants again move to dismiss, arguing that the amended complaint still fails to state a federal claim under the Lanham Act and the CFAA, so I should dismiss those claims and decline to exercise supplemental jurisdiction over the state law claims. The defendants also argue the state law claims fail for a variety of reasons. Motogolf responds that it has adequately alleged its federal claims, but even if it has not, I should exercise supplemental jurisdiction over the state law claims. It contends it has adequately alleged those claims.

Motogolf also moves for reconsideration of my prior dismissal order, contending that I misunderstood under what section of the Lanham Act Motogolf's claim arose. ECF No. 85. The defendants oppose reconsideration as untimely, unnecessary, and without merit.

I set forth the factual allegations in my prior order. ECF No. 68. I do not repeat the facts here except where necessary to resolve the motions and to identify new allegations in the amended complaint. I dismiss the Lanham Act and CFAA claims. I will allow Motogolf to amend its CFAA claim. I deny without prejudice the remainder of the defendants' motion to dismiss until the question of subject matter jurisdiction is resolved.

## I. ANALYSIS

Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to plead a "short and plain statement of the claim showing that the pleader is entitled to relief." For a motion to dismiss, I apply a two-step process to determine whether a party has stated a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). First, I must accept as true all the complaint's allegations and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions and "mere conclusory statements" are not entitled to that same assumption of truth. *Id.* at 678-79. Second, I must determine whether the complaint's factual allegations put forward a plausible claim for relief. *Id.* at 679. This is a context-specific determination that requires drawing on my judicial experience and common sense. *Id.* at 679.

In addition to Rule 8's pleading requirements, Motogolf's claims are subject Rule 9(b)'s heightened pleading standard because they sound in fraud.[2] Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." A plaintiff must provide the "who, what, when, where, and how" of the fraudulent misconduct. *See Vess v. Ciba-Geigy Corp.*

---

[2] Motogolf does not appear to dispute Rule 9(b)'s application to its claims. ECF No. 76 at 6 ("Plaintiff's allegations clearly meet the requirements of FRCP 9(b)."). Although not all of Motogolf's claims require fraud as an element, Rule 9(b) applies to claims that are based on a "unified course of fraudulent conduct." *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104-05 (9th Cir. 2003). Motogolf bases its claims on the defendants allegedly making misleading representations that they are legitimate Motogolf customers by clicking the PPC ads. *See, e.g.*, ECF No. 71 at 22-23, 25, 35-36.

*USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation omitted).  This requires "more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* (emphasis and quotation omitted).  The standard can be relaxed when the facts of fraud are in the defendants' exclusive control, but the plaintiff must still state the "factual basis for the belief." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

**A. Lanham Act**

The Lanham Act governs trademarks and unfair competition. 15 U.S.C. § 1051 *et seq.*  I dismissed the prior complaint's Lanham Act claim because Motogolf did not allege facts showing how the defendants' click activity was likely to deceive or cause confusion. ECF No. 68 at 14.  I granted Motogolf leave to amend this claim. *Id.*

Motogolf has not changed its allegations for this claim from the prior complaint other than to emphasize that its claim is brought under 15 U.S.C. § 1125(a)(1)(B), not § 1125(a)(1)(A).  Motogolf contends this is significant because subsection (B) does not have a "likely to deceive" or confusion element.  Motogolf alleges that by clicking on the ads, the defendants misrepresented that they were legitimate potential customers of Motogolf.

The defendants move to dismiss, arguing that subsection (B) also has a likely to deceive element.  The defendants also assert that clicking on an ad is not a statement at all, much less a misrepresentation.  They further contend that any statement they made by clicking on an ad is not commercial advertising or promotion within the Lanham Act's meaning and does not relate to their own or Motogolf's goods, services, or commercial activities.

Motogolf responds that it has adequately alleged that by clicking on Motogolf's ads, the defendants made a false statement of fact that they were legitimate potential customers; that they

4

did so to frustrate Motogolf's advertising campaign; and that they caused damage to Motogolf while enhancing Top Shelf's business. Motogolf contends that it relies on legitimate clicks to redirect consumers to the Motogolf website for potential purchases.

To state a false advertising claim under § 1125(a)(1)(B), Motogolf must allege:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product;
> (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;[3]
> (3) the deception is material, in that it is likely to influence the purchasing decision;
> (4) the defendant caused its false statement to enter interstate commerce; and
> (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012). A commercial advertisement means "(1) commercial speech; (2) by the defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services," that is (4) "disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry." *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1054 (9th Cir. 2008) (quotation omitted).

Motogolf fails to state a false advertising claim under the Lanham Act. First, Motogolf does not plausibly allege that the defendants' clicking activity constitutes commercial

---

[3] Motogolf contends there is no element of a likelihood of deception in a false advertising claim, even though it cites *Skydive Arizona* for the elements of a Lanham Act false advertising claim. *See* ECF No. 76 at 4-5. A false advertising claim requires actual deception or a tendency to deceive. It is unclear why Motogolf burdened the court and the parties with the motion for reconsideration on this point. I allowed Motogolf to amend its Lanham Act claim and the parties fully briefed the issue regarding whether § 1125(a)(1)(B) contains a likely to deceive element. There was no need to file a motion for reconsideration four months after my order and a month after briefing on the motion to dismiss was complete. I deny the motion for reconsideration as untimely and unnecessary. *See* LR 59-1(c).

5

advertising. The defendants are purportedly misrepresenting themselves as consumers, not making false statements in their own advertising campaign for the purpose of influencing consumers to buy the defendants' goods or services. There is no allegation that the defendants' click activity is communicated to any consumers, much less widely disseminated to the purchasing public.

Even if the clicking activity could constitute a false statement in a commercial advertisement, there is no allegation that the false statement is about the defendants' own products or Motogolf's products. Rather, the defendants are allegedly misrepresenting themselves as potential consumers. And because they are misrepresenting themselves as consumers to Motogolf only, they are not making a material representation that is likely to influence other consumers' purchasing decisions. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014) ("[A] plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff.").

I therefore dismiss the Lanham Act claim and the related conspiracy and aiding and abetting claims. I dismiss these claims with prejudice because Motogolf has had a prior opportunity to amend but has not alleged facts that would support a Lanham Act claim. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009), *as amended* (Feb. 10, 2009).

**B. CFAA**

The CFAA is a federal computer fraud law that was designed "primarily to address the growing problem of computer hacking." *United States v. Nosal*, 676 F.3d 854, 858 (9th Cir.

2012) (citing S. Rep. No. 99–432, at 9 (1986)). The CFAA's subdivisions prohibit various kinds of conduct. 18 U.S.C. § 1030. Motogolf's complaint, amended complaint, and its opposition to the motion to dismiss do not specify which subdivisions the defendants allegedly violated, but the pleadings and briefs suggest it is most likely §§ 1030(a)(4) and 1030(a)(5)(B)-(C). To state a claim under § 1030(a)(4), Motogolf must allege that the defendants:

> (1) accessed a "protected computer," (2) without authorization or exceeding such authorization that was granted, (3) "knowingly" and with "intent to defraud," and thereby (4) "further[ed] the intended fraud and obtain[ed] anything of value," causing (5) a loss to [Motogolf] during any one-year period aggregating at least $5,000 in value.

*LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009). Sections 1030(a)(5)(B) and (C) also both require someone to intentionally access a computer without authorization. That access violates subsection (B) when it "recklessly causes damage," and it violates subsection (C) when it "causes damage and loss." 18 U.S.C. §§ 1030(a)(5)(B)-(C).

As discussed in my prior order, the Ninth Circuit has interpreted the CFAA's "without authorization" language to not encompass access to publicly available websites. ECF No. 68 at 8-9 (citing *HiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985 (9th Cir. 2019), *petition for cert. filed* (Mar. 9, 2020) (No. 19-1116)). I concluded that Motogolf failed to state a claim under the CFAA because it had not plausibly alleged that the defendants acted "without authorization" by accessing Motogolf's publicly accessible website and PPC ads. *Id.* Motogolf has not substantively altered these allegations, so to the extent Motogolf is attempting to reassert a CFAA claim based on the defendants clicking on PPC ads, I again dismiss it, as well as any related conspiracy and aiding and abetting claims.

In the amended complaint, Motogolf adds the allegation that on October 29, 2019, Motogolf's website became inoperable for two days and its PPC ads were not displayed on Google for four days. ECF No. 71 at 17-18. Motogolf alleges that the defendants "intentionally caused" the website to crash. *Id.* at 17.

The allegation that the defendants caused the crash and prevented the ads from displaying on Google is conclusory and has no plausible factual foundation. The amended complaint does not identify how the defendants allegedly caused Motogolf's website to crash or prevent its PPC ads from displaying on Google. In its opposition, Motogolf relies on the timing of the website crash in relation to the second cease-and-desist letter Motogolf sent to the defendants. ECF No. 76 at 9. But it is speculative whether the crash was caused by the defendants, some other third party, or something innocuous like a hardware or software failure. *See Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (stating that "conclusory allegations in the complaint [that] are speculative . . . do not state a plausible claim for relief"). Motogolf's suspicions do not amount to plausible factual allegations. I therefore dismiss the CFAA claim based on the alleged crash of the Motogolf website.

I am skeptical that Motogolf has facts supporting its allegation that the defendants caused the website to crash because there was no mention of this crash in the original complaint even though the crash occurred months before the complaint was filed. Additionally, despite the crash occurring a year and a half before the amended complaint, Motogolf stated no facts in its amended complaint, nor suggested it had any in its opposition, to plausibly allege the defendants caused the crash. Nevertheless, I grant Motogolf leave to amend this claim based only on the alleged crash if it has a plausible factual basis to do so.

I deny the defendants' motion to dismiss the state law claims without prejudice. If Motogolf cannot plausibly state a federal claim, then I will decline to exercise supplemental jurisdiction over the state law claims. Motogolf bases subject matter jurisdiction in this court on federal question jurisdiction, so the state law claims are before me under supplemental jurisdiction. 28 U.S.C. § 1367(a). I may decline to exercise supplemental jurisdiction over a state law claim if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). Should one of these factors be present, I consider whether continuing to exercise supplemental jurisdiction promotes economy, convenience, fairness, and comity. *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997). Whether to decline the exercise of supplemental jurisdiction under § 1367(c) lies within my discretion. *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008).

If Motogolf cannot plausibly state a CFAA claim, then there will no longer be a federal question supporting original jurisdiction in this court. The remaining claims raise only Nevada state law issues that should be resolved by the state court. The case has not progressed so far in federal court that concerns about economy or convenience are implicated. Consequently, if Motogolf cannot plausibly state a CFAA claim, I intend to decline to exercise supplemental jurisdiction over the state law claims. And because I have doubts about Motogolf's ability to do so, I decline to address the remainder of the defendants' motion to dismiss at this time.

/ / / /

/ / / /

9

## III. CONCLUSION

I THEREFORE ORDER that defendants Top Shelf Golf, LLC, Top Shelf IT Solutions, Inc., Ivan Sokolovich, and Inna Sokolovich's motion to dismiss **(ECF No. 74) is GRANTED IN PART**. Plaintiff Motogolf.com, LLC's claims under the Lanham Act are dismissed with prejudice. Motogolf's claims under the CFAA that are based on allegations that the defendants accessed Motogolf's ads or website without authorization by clicking on the ads are dismissed with prejudice. Motogolf's claims under the CFAA that are based on the crash of its website are dismissed without prejudice.

I FURTHER ORDER that plaintiff Motogolf.com, LLC may file an amended complaint by April 11, 2022. Motogolf may amend only its CFAA claim and only to add plausible factual allegations related to the alleged crash of its website, if facts exist to do so. If Motogolf does not file an amended complaint by April 22, 2022, I will dismiss the remaining state law claims without prejudice because I will decline to exercise supplemental jurisdiction over them.

I FURTHER ORDER that plaintiff Motogolf, LLC's motion for reconsideration **(ECF No. 85) is DENIED.**

DATED this 19th day of March, 2022.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE